## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA
## JOHNSTOWN

| | |
|---|---|
| ADEWUMI ABIOYE, | ) |
| | ) Civil Action No. 3: 23-cv-0251 |
| Petitioner, | ) |
| | ) United States Magistrate Judge |
| v. | ) Cynthia Reed Eddy |
| | ) |
| LEONARD ODDO, in his official Capacity as Warden of the Moshannon Valley Processing Center, et al., | ) |
| | ) |
| Respondents. | ) |

### MEMORANDUM OPINION[1]

**Cynthia Reed Eddy, United States Magistrate Judge**

### I.     Introduction

On October 12, 2023, Petitioner Adewumi Abioye ("Abioye"), an immigration detainee in the custody of the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"), currently detained at Moshannon Valley Processing Center ("MVPC"), filed a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 challenging his continued detention without a bond hearing. (ECF No. 1). He requests that the Court conduct, or order Respondents to schedule before an immigration judge, a bond hearing at which the Government bears the burden of establishing that his continued detention is justified. On November 14, 2023, Respondents, Merrick B. Garland, Attorney General of the United States; Alejandro Mayorkas, United States Secretary of DHS, Leonard Oddo, Warden of MVPC; and

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties have voluntarily consented to have a U.S. Magistrate Judge conduct proceedings in this case, including entry of a final judgment. *See* ECF Nos. 7 and 9.

Camilla Wamsley, Acting Field Office Director of ICE and Removal Operations, Philadelphia Field Office (collectively "Respondents") filed a response to the petition arguing that Abioye is not entitled to any habeas relief. (ECF No. 14). Thereafter, Abioye, filed a reply to Respondents' response. (ECF No. 15). For the following reasons, Abioye's petition for a writ of habeas corpus will be granted to the extent that the Court will order that an immigration judge hold a bond hearing.

## II.     Background and Procedural History

Aboiye is 36 years old and is a citizen and national of Nigeria. (ECF No. 1-4). Aboiye entered the United States on or about April 29, 2018, as a nonimmigrant visa entrant/B2 visitor for pleasure. (*Id.*) He remained in the United States beyond October 29, 2018, without authorization from the Immigration and Naturalization Service or its successor, the DHS.

### A.     Abioye's criminal history and immigration proceedings

On February 11, 2020, the Grand Jury for the District of Maryland returned an indictment against Aboiye and two others charging them with conspiracy to commit wire fraud in violation of 18 U.S.C. § § 1349 and 1343. United States v. Abioye, et al., Crim. Case No. 1:20-cr-0052, United States District Court for the District of Maryland.[2] According to the Declaration of Abioye, he entered a plea of guilty in July of 2020 (ECF No. 1-2, ¶ 12) and on May 13, 2022, Abioye was sentenced and committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of 27 months, with credit for time served in federal custody since 1/31/20. (ECF No. 4-2 at p. 10). The criminal case docket reflects that an Amended Judgment was entered on

---

[2]     *See* public docket, of which this Court takes judicial notice, at https://mdd-ecf.sso.dcn/cgi-bin/DktRpt.pl?131304380511482-L_1_0-1.

August 19, 2022, which imposed restitution in the amount of $1,335,923.77.  All other conditions remained the same.

In May 2022, Abioye completed his criminal sentence and was immediately transferred to ICE custody.  (ECF No. 1-2 at p. 3).  On May 20, 2022, DHS issued a Notice to Appear charging Abioye with deportability on the grounds of being a noncitizen convicted of an aggravated felony, 8 U.S.C. §1227(a)(2)(A)(iii), and overstaying his B2 visa, 8 U.S.C. § 1227(a)(1)(B). (ECF No. 1-3 at p. 5).  On July 22, 2022, Abioye filed an I-589, "Application for Asylum and for Withholding of Removal" under the Convention Against Torture ("CAT").  (ECF No. 1-4 at 3).  After a continuance to obtain counsel, Abioye appeared before the immigration court on November 17, 2022. (Transcript of Hearing, ECF No. 14-7).  On November 29, 2022, the immigration judge issued a written Decision and Order denying Abioye's application for deferral of removal under the CAT and ordering him removed to Nigeria.  (ECF No. 1-4 at pp. 3-12).  Abioye appealed this decision to the Board of Immigration Appeals ("BIA").  On May 23, 2023, the BIA denied the appeal.  (ECF No. 1-6 at pp. 4 – 7).

On June 22, 2023, Abioye filed a petition for review and stay of removal with the United States Court of Appeals for the Fourth Circuit.  See Abioye v. Garland, No. 23-1663 (4th Cir.) (CTA4 Doc. No. 1).  Pursuant to the Standing Order of the Court of Appeals, Abioye's removal was stayed through July 5, 2023.  (Id., Doc. No. 7). On August 11, 2023, the Court of Appeals granted Abioye's amended motion for stay of removal and stayed "petitioner's removal during the pendency of this petition for review."  (ECF No. 1-7).  According to the appeals docket, on September 20, 2023, Abioye filed a Brief in support of his Petition (CTA4 Doc No. 27); on October 19, 2023, Respondent filed a response to the Petition (CTA4 Doc. No. 29); and on November 9,

2023, Abioye filed a Reply Brief (CTA4 Doc. No. 32). According to the public docket, Abioye's appeal remains pending.

    2. <u>Abioye's Habeas Petition</u>

On October 12, 2023, Abioye, through counsel, filed this petition for a writ of habeas corpus contending that his continued detention without a bond hearing violates his due process rights. (ECF No. 1). He requests that the Court conduct, or order Respondents to schedule before an immigration judge, an individualized bond hearing and also requests "any other further relief this Court deems just and proper." (*Id*.).

**III.  Discussion**

Under 28 U.S.C. § 2241(c), a prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).  Abioye contends that his prolonged detention without a bond hearing violates the due process clause of the Fifth Amendment.

Title 8, United States Code, § 1226, generally governs the process of arresting and detaining aliens pending their removal. *Jennings v. Rodriguez,* 583 U.S. 281, 288 (2018)).  That provision "distinguishes between two different categories of aliens" – those detained under § 1226(a) and those detained under § 1226(c). *Id.* An alien detained under § 1226(a) must be afforded a bond hearing before an immigration judge to determine if the alien's detention is necessary while he or she awaits immigration proceedings. *Id*.  But § 1226(c) provides for mandatory detention of "any alien who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Id.* at 289. Section 1226(c) mandates detention of any alien falling within its scope and that detention may end prior to the conclusion of removal proceedings 'only if' the alien is released for witness-protection purposes." *Id.*  Here, the parties

4

agree that Abioye is being held pursuant to § 1226(c) and now has been detained without a bond hearing for approximately 18 months.

Although Title 8, United States Code, § 1226(c), provides for mandatory detention and the Supreme Court of the United States has determined that "[d]etention during removal proceedings is a conditionally permissible part of" the removal process, prolonged detention raises due process concerns. *Demore v. Kim*, 538 U.S. 510, 531 (2003). The Court of Appeals for the Third Circuit addressed prolonged detention of aliens under § 1226(c) without a bond hearing in *Diop v. ICE/Homeland Sec.*, 656 F.3d 221 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York County Prison*, 783 F.3d 469 (3d Cir. 2015).[3]

To the extent the holdings in *Diop* and *Chavez-Alvarez* were grounded in the canon of constitutional avoidance, those holdings did not survive the Supreme Court's decision in *Jennings*. *German Santos v. Warden Pike County Corr. Facility*, 965 F.3d 203, 209 (3d Cir. 2020). But *Jennings* did not call into question the holdings in *Diop* or *Chavez-Alvarez* that detention under § 1226(c) without a bond hearing violates due process if unreasonably prolonged. *Borbot v. Warden Hudson County Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018). Rather, *Jennings* left *Diop* and *Chavez-Alvarez's* "framework for assessing as-applied constitutional challenges intact." *German*

---

[3] In *Diop*, applying the canon of constitutional avoidance, the Court of Appeals held that § 1226(c) "implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." *Diop*, 656 F.3d at 231. Four years later, in *Chavez-Alvarez*, the Court of Appeals noted that whether detention has become unreasonable is "highly fact-specific," and that "due process requires us to recognize that, at a certain point – which may differ case by case - the burden to an alien's liberty outweighs a mere presumption that the alien will flee and/or is dangerous." *Chavez-Alvarez*, 783 F.3d at 474-75.

*Santos*, 965 F.3d at 210.  Under that framework, aliens detained under § 1226(c) are entitled to a bond hearing once their detention becomes unreasonable.  *Id*. at 210.

Reaffirming that "[r]easonableness is a 'highly fact-specific' inquiry[,]" our Court of Appeals in *German Santos* articulated "a nonexhaustive list of four factors to consider in assessing whether an alien's detention has grown unreasonable."  *Id*. at 210 (quoting *Chavez-Alvarez*, 783 F.3d at 474). Those four factors are:  (1)  the duration of the alien's detention; (2) whether the alien's detention is likely to continue; (3) the reasons for any delay; and (4) whether the conditions under which the alien is confined are meaningfully different from criminal punishment.  Applying the factors set forth in *German Santos,* the Court concludes that Abioye's detention has become unreasonable.

### A.  The First *German Santos* Factor

The first *German Santos* factor is the duration of the alien's detention, which our Court of Appeals has identified as the "most important factor."  *Id*. at 211.  Here, Abioye has been detained in ICE custody since May 22, 2022, a period of over eighteen (18) months to date.

The Court of Appeals for the Third Circuit has declined "to adopt a presumption of reasonableness or unreasonableness of any duration."  *German Santos*, 965 F.3d at 211.  Given the lack of such a presumption, and given that the inquiry is fact specific, courts within the Third Circuit have reached different conclusions as to the length of detention that qualifies as reasonable or unreasonable.  *See Smith v. Ogle*, No. 3: 21-cv-01129, 2023 WL 3369154, at *6 (M.D. Pa. Jan. 3, 2023), report and recommendation adopted, 2023 WL 3362597 (M.D. Pa. May 10, 2023) (listing cases).

Respondents here argue that the duration of Abioye's detention does not make his continued duration unreasonable.  They point out that Abioye's "case proceeded at a timely, steady

pace before the agency, with the government prevailing at every step." Resp. at 8 (ECF No. 14). While concededly a close call, the Court finds that Abioye's 18-month detention has reached the tipping point when the length of the detention begins to weigh in favor of a bond hearing. Thus, the Court finds that the first *German Santos* factor weighs in favor of a finding of unreasonableness.

### B. The Second *German Santos* Factor

The second *German Santos* factor is whether the alien's detention is likely to continue. "When the alien's removal proceedings are unlikely to end soon, this suggests that continued detention without a bond hearing is unreasonable." *Id*. (citing *Chavez-Alvarez*, 783 F.3d at 477-78). As noted *supra*, Abioye's appeal is pending before the Court of Appeals for the Fourth Circuit. A review of the appeals docket indicates that Abioye filed a reply brief on November 9, 2023. All that this Court can conclude "with certainty is that additional delay of an undefined duration will continue to accrue pending a ruling by the court of appeals, and any further administrative proceedings that may be necessary following that appellate court decision." *Bah v. Doll*, No. 3: 18-cv-1409, 2018 WL 6733959, *8 (M.D. Pa. Oct. 16, 2018). The prospect of an additional undefined period of further detention in the future weighs in favor of a finding of unreasonableness.

### C. The Third *German Santos* Factor

The third *German Santos* factor is the reasons for any delay. In *German Santos*, the court of appeals instructed that courts should "not hold an alien's good-faith challenge to his removal against him, even if his appeals or applications for relief have drawn out the proceedings." *German Santos,* 965 F.3d at 211 (citing *Chavez-Alvarez*, 783 F.3d at 476-77). Nor should a court "hold the agency's legal errors against the Government, unless there is evidence of carelessness or bad faith."

7

*Id.* "[D]etention under § 1226(c) can still grow unreasonable even if the Government handles the removal proceedings reasonably." *Id*. (citing *Chavez-Alvarez*, 783 F.3d at 475).

While the record reflects that a six-week delay occurred when Abioye secured counsel and another three-week delay occurred when counsel was granted an extension of the briefing schedule from the Court of Appeals for the Fourth Circuit, the Court cannot find that the delay is attributable to any bad faith on the part of Abioye or the Government. Rather, Abioye is exercising his right to pursue a defense to his removal by seeking judicial review of the denial of his request for cancellation of removal. Thus, the Court concludes that the third *German Santos* factor does not favor either side.

D.  The Fourth *German Santos* Factor

The fourth and final *German Santos* factor is whether the conditions under which the alien is confined differ meaningfully from criminal punishment. In *German Santos*, the Court of Appeals for the Third Circuit determined that "[d]espite its civil label," German Santos's detention at the Pike County Correctional Facility was "indistinguishable from criminal punishment." *German Santos*, 965 F.3d at 213. Noting that German Santos was detained in a prison with convicted criminals and was confined to his cell for 23 hours a day, the appeals court concluded that "[t]hose conditions strongly favor a finding of unreasonableness." *Id*.

Here, Abioye is currently detained at Moshannon Valley Processing Center, although the record reflects that was detained from March of 2023 until August of 2023, at Pike County Correctional Facility. (ECF No. 1-2, at ¶ 19). In his Declaration, Abioye avers that,

> 20) Whether at Moshannon or Pike, the conditions of "civil" immigration detention are worse than when I was in federal custody. I have told guards and detention center staff many times that this is not a concentration camp and the conditions here are terrible. When I arrived at both Moshannon and Pike, I was given used clothing, including used undergarments, to wear.

8

21) I have had the same pair of shoes since I went to Pike which now have holes in them. However, Moshannon refused to replace them and told me I would have to pay for them from the commissary. . . .

22) I need glasses to be able to see and have had the same pair for four years. The prescription is out of date . . ., the frames are broken . . . [T]he facility nurse examined me and said there is a very long waitlist to go to an ophthalmologist and my only other option is to have a my family send or bring in the four year old prescription to try to get a new pair of glasses.

. . .

28) There are several different security classifications for detainees at Moshannon. While Moshannon holds itself out as only low and medium-low security immigrant detainees, it also has highs and medium-highs and as such, the facility is treated like a maximum-security prison. Lows and medium-lows are recent arrivals or those convicted of white-collar crimes whereas the highs and medium-highs are typically individuals convicted of violent crimes. The two groups cannot be in the same areas at the same time. Because of this, apart from the several hours of recreation and mealtimes we get each day we have to be in our pods. Visitation is also separate, and because Moshannon has more medium-high and high security detainees, it essentially reduces the time all of us get to spend with our families and loved ones.

29) Moshannon's staff can be cruel toward detainees. . . . we are constantly threatened with [solitary confinement]. Recently then sent a guy to solitary confinement for refusing a blood test.

30) On another occasion the guards threw out pictures of a Ghanian man's young child that were taped to his bunk during a search and when he expressed his frustration I watched them slam him to the ground and send him to solitary. Other detainees objected to this treatment, and they sent riot guards in with guns and tear gas. The Ghanian detainee was in solitary for two weeks. . . .

Declaration of Adewumi Abioye (ECF No. 1-2 at 2-7).

Respondents respond that Abioye's confinement is meaningfully distinguishable from criminal punishment. Unlike the petitioner in *German Santos*, Abioye is not "being detained in prison alongside convicted criminals" and is not "confined to his cell for twenty-three hours per day." Resp. at p. 13. Additionally, unlike criminal prisoners, immigration detainees at MVPC "have access to telephone and video call capabilities." He is housed in an "immigration processing

center" housing only immigration detainees. *Id*. at p. 14. *See generally*, Moshannon Valley Processing Center,

https://www.geogroup.com/FacilityDetail/FacilityID/67 (last visited November 29, 2023).

Because Abioye has not demonstrated that his detention is indistinguishable from criminal punishment, the Court finds that this factor weighs in favor of Respondents.

**III. Conclusion**

Given the circumstances presented, including the length of time Abioye has already been detained, that he faces possibly lengthy continued confinement while he pursues his appeal to the Court of Appeals for the Fourth Circuit and further administrative proceedings that may be necessary following that appellate court decision, and that the cause for delay is not rightfully attributed to him, the Court concludes that due process demands that Abioye be given an individualized bond hearing within thirty (30) days before an immigration judge under the standards set forth in *German Santos v. Warden Pike County Correctional Facility,* 965 F.3d 203 (3d Cir. 2020).[4]

An appropriate Order follows.

Dated: November 29, 2023

By the Court:

s/Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: All Counsel of Record
(via ECF electronic notification)

---

[4] Nothing in this Memorandum Opinion should be construed as suggesting what the outcome of that hearing should be. That assessment is left to the sound discretion of the immigration judge.