IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
JOHNSTOWN DIVISION

| | |
|---|---|
| ADEWUMI ABIOYE, ) | |
| ) | Civil Action No. 3:23-cv-0251 |
| Petitioner, ) | |
| ) | United States Magistrate Judge |
| v. ) | Christopher B. Brown |
| ) | |
| LEONARD ODDO, in his official ) | |
| Capacity as Warden of the Moshannon ) | |
| Valley Processing Center, CAMILLA ) | |
| WAMSLEY, in her official capacity as ) | |
| Acting Field Office Director of the ) | |
| Immigration and Customs ) | |
| Enforcement, Enforcement and ) | |
| Removal Operations, Philadelphia ) | |
| Field office; ALEJANDRO ) | |
| MAYORKAS, in his official capacity as ) | |
| Secretary of the Department of ) | |
| Homeland Security; and MERRICK ) | |
| GARLAND, in his official capacity as ) | |
| Attorney General of the United States, ) | |
| ) | |
| Respondents. ) | |

### MEMORANDUM OPINION[1]

**CHRISTOPHER B. BROWN,** United States Magistrate Judge

Before the Court is the Motion for Attorneys' Fees and Expenses Under the Equal Access to Justice Act ("EAJA") filed by Petitioner Adewumi Abioye ("Abioye").

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, including the entry of final judgment, as authorized by 28 U.S.C. § 636. The case was originally assigned to Magistrate Judge Cynthia Reed Eddy. Due to the retirement of Judge Eddy, the case was reassigned to the undersigned.

1

ECF No. 25. The motion has been fully briefed. ECF Nos. 27 and 31. For the reasons set forth below, the motion will be granted.

## I. Background

This case arises from Respondents' detention of Abioye pending adjudication of his immigration removal proceedings. The pertinent facts can be simply stated:

Abioye is a citizen and national of Nigeria. ECF No. 1-4. He entered the United States on or about April 29, 2018, as a nonimmigrant visa entry/B2 visitor for pleasure. *Id.* He remained in the United States without authorization after his visa expired. In July 2020, Abioye pled guilty in the United States District Court for the District of Maryland of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1349 and 1343. ECF No. 1, ¶ 22. On May 13, 2022, Abioye received a sentence of 27 months. ECF No. 25. On May 20, 2022, ICE served Abioye a Notice to Appear which stated that he was removable due to his conviction of conspiracy to commit wire fraud and that he had overstayed his B2 visa. ECF No. 1, ¶ 25. On the same day of his release from criminal custody, he was transferred to ICE custody and was civilly detained without bond under 8 U.S.C. § 1226(c) based on his conviction of conspiracy to commit wire fraud.[2]

---

[2] Under 8 U.S.C. § 1226(c), "[t]he Attorney General shall take into custody any alien" who is inadmissible or deportable on the basis of enumerated categories of crimes and terrorist activities. *Id.* § 1226(c)(1). By its terms, § 1226(c) does not entitle detainees to a bond hearing. Release is authorized "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes "and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of others or of property and is likely to appear for any scheduled proceeding." *Id.* § 1226(c)(2).

Abioye retained Attorney Daniel Melo from Capital Area Immigrants' Rights (CAIR) Coalition, who appeared with Abioye at his preliminary hearing in the Cleveland Immigration Court on July 27, 2022.[3]  ECF No. 25, at 2.  The Immigration Judge ordered Abioye removed to Nigeria.  *Id.*  The Board of Immigration Appeals denied Abioye's appeal on May 23, 2023.  On June 22, 2023, Abioye, through counsel, filed a petition for review and a stay of removal in the United States Court of Appeals for the Fourth Circuit.  *Id.,* at 3.  The Court of Appeals for the Fourth Circuit granted a Stay of Removal during the pendency of his petition for review.  *Id.*  According to the public docket, oral argument on Abioye's appeal is tentatively scheduled during the appellate court's December 10-13, 2024, argument session.  *See Abioye v. Garland*, No. 23-1663 (4th Cir.), https://ca4-ecf.sso.dcn/cmecf/jsp/CaseSummary.jsp (last reviewed 9/26/2024).

On October 12, 2023, Abioye filed in this Court a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging his continued detention without an individualized bond hearing as a violation of the Due Process Clause of the Fifth Amendment.  ECF No. 1.  The Government opposed Abioye's request for a bond hearing.  ECF No. 14.  On November 29, 2023, applying the four-factor test set forth in *German Santos v. Warden Pike Cnty Corr. Facility*, 965 F.3d 203, 210-11 (3d Cir. 2020), the Court granted the writ and ordered that an immigration judge conduct

---

[3]   CAIR Coalition is a 401(c)(3) nonprofit organization, which provides pro bono legal services.  ECF 25, at 4.

3

an individualized bond hearing.⁴  ECF Nos. 17 and 23.  That bond hearing was held on December 11, 2023.  ECF No. 24.  The immigration judge found Abioye was neither a danger to the community nor a flight risk and released Abioye on a $5,000 bond.  *Id.*  Upon release, he had spent more than 18 months in civil detention.  As of January 9, 2024, Abioye was residing in Silver Spring, Maryland.  ECF No. 25-1, ¶ 1.

Now before the Court is Abioye's motion requesting an award of attorneys' fees and other expenses under the EAJA.  ECF No. 25.  In support, Abioye has submitted a number of documents including his own Declaration as well as the Declaration of Attorney Daniel Melo and the Order of the Immigration Judge entered December 11, 2023.  ECF No. 25.

## II.  Discussion

The Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, provides, in relevant part:

> Except as otherwise specifically provided by statute, a court shall award to <u>a prevailing party</u> other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party <u>in any civil action</u> (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, <u>unless the court finds that the position of the United States was</u>

---

⁴  Those factors are:  (1) the duration of the detention, which the Third Circuit Court of Appeals has identified as the "most important factor;" (2) whether the detention is likely to continue; (3) the reasons for any delay; and (4) whether the conditions under which the alien is confined differ meaningfully from criminal punishment.

<blockquote>substantially justified or that special circumstances make an award unjust.</blockquote>

28 U.S.C. § 2412(d)(1)(A) (emphasis added).  Three of these provisions are at issue in this case:  first, whether the underlying action is a "civil action" for the purposes of the EAJA; second, whether the position of the United States was substantially justified; and third, whether special circumstances make an award unjust.[5]  ECF No. 27.

### A. A Habeas Proceeding Challenging Immigration Detention Is A "Civil Action" Under The EAJA

As noted, the EAJA applies to "any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action." 28 U.S.C. § 2412(d)(1)(A).  "On its face, the term 'any civil action' would seem to include habeas petitions, which ordinarily qualify as civil actions."  *Vacchio v. Ashcroft*, 404 F.3d 663, 667 (2d Cir. 2005) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting, in a case stemming from a habeas petition challenging immigration detention, that "[t]he proceedings at issue here are civil, not criminal")).  Notably, neither the Supreme Court of the United States nor the Court of Appeals for the Third Circuit has addressed whether a civil habeas action challenging detention is a "civil action" under the EAJA.  The Court of Appeals for the Third Circuit, however, has adjudicated motions for attorneys' fees in immigration habeas cases without

---

[5]  Respondents do not dispute that Abioye is the prevailing party in the habeas proceeding, or challenge the timeliness of the request for fees or the reasonableness of the fees and costs requested.

questioning whether such cases fall outside the ambit of the EAJA. *See Kiareldeen v. Ashcroft*, 273 F.3d 542 (3d Cir. 2001) (considering the merits of a motion for attorney's fees under the EAJA in a habeas case filed by a noncitizen challenging the constitutionality of his immigration detention) and *German Santos v. Warden Pike County Correctional Facility*, No. 19-2663 (3d Cir. Feb. 19, 2021) (docket entry 98) (approving the parties' stipulation to award attorney's fees in the amount of $31,305.00 under the EAJA). Additionally, district courts within this Circuit have found that the EAJA applies to a § 2241 habeas action challenging immigration-related detention. *See Michelin v. Oddo*, Case No. 3:23-cv-22, 2024 WL 3937228 (W.D. Pa. Aug. 26, 2024); *Sisiliano-Lopez v. Lowe*, 448 F. Supp. 3d 419 (M.D. Pa. 2020) (granting in part motion for attorney's fees under the EAJA without questioning whether EAJA applies)); *Ildefonso-Candelario v. Lowe*, Case No. 3:16-2120, 2017 WL 4310078, *2 (M.D. Pa. Sept. 28, 2017) (stating "[t]his court has repeatedly found that the EAJA applies to a § 2241 habeas action challenging immigration-related detention.") (citations omitted).

The courts of appeal that have addressed whether immigration habeas cases are "civil actions" under the EAJA are divided. The Second and Ninth Circuits have held that an immigration habeas case proceeding is a "civil action" under the EAJA. *See Vacchio v. Ashcroft*, 404 F.3d 663, 670-72 (2d Cir. 2005) ("civil actions" under EAJA encompass immigration habeas proceedings), and *In re Petition of Hill*, 775 F.2d 1037, 1040–41 (9th Cir. 1985) (habeas action by an alien seeking admission to the United States compensable under the EAJA). In contrast, the Fourth and Fifth

Circuits have held that all habeas petitions, those challenging immigration detention and those challenging criminal detention, are "hybrid" in nature and for this reason do not fall under the EAJA's "any civil action" provision. *See Obando-Segura v. Garland*, 999 F.3d 190, 192 (4th Cir. 2021) and *Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023), *cert. denied sub nom. Gomez Barco v. Witte*, 144 S. Ct. 553 (2024).

After a careful review of the various court decisions, including those Third Circuit decisions awarding fees without questioning whether the EAJA applies, this Court adopts the sound reasoning of the Second and Ninth Circuits, as well as recent district court cases that have held that immigration habeas cases are "civil actions" covered by the EAJA, and concludes that habeas civil immigration proceedings fall squarely within the EAJA's "any civil action" provision. This conclusion is consistent with the recognition that immigration proceedings themselves are civil in nature. *See, e.g., Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting, in an immigration habeas case, that "[t]he proceedings at issue here are civil, not criminal"); *Padilla v. Kentucky*, 559 U.S. 356, 365 (2010) ("[R]emoval proceedings are civil in nature"); *German Santos*, 965 F.3d at 211 (stating "[r]emoval proceedings are civil, not criminal"); *Xu Yong Lu v. Ashcroft,* 259 F.3d 127, 131 (3d Cir. 2001) ("Immigration proceedings, however, are civil, rather than criminal, in nature . . . .). Moreover, the only type of "civil actions" that are outside the ambit of the EAJA are those "sounding in tort[.]" 28 U.S.C. § 2412(d)(1)(A). As aptly noted by Judge Lynn Adelman, "If Congress had intended to exclude habeas

7

actions from the EAJA, it would have done so as it excluded tort actions." *Kholyavskiy v. Schlecht*, 479 F. Supp. 2d 897, 901 (E.D. Wis. 2007).

For these reasons, the Court agrees with Abioye that this immigration habeas case challenging the legality of his civil detention without a bond hearing qualifies as a "civil action" under the EAJA.

The Court now turns to whether Abioye is eligible to recover under the EAJA.

### B. Eligibility To Recover Under The EAJA

In ruling on a request for fees and expenses pursuant to the EAJA, a court must determine whether the requesting party is eligible for fees and the amount of requested fees is reasonable. A requesting party is eligible for an attorney's fee award where: (1) the requesting party is the prevailing party in a non-tort suit involving the United States; [6] (2) the government's position was not substantially justified; (3) the fee petition was timely filed; (4) the requesting party had a net worth of less than $2 million when the case was filed;[7] and (5) there are no special circumstances that would make the award of fees unjust. *See* 28 U.S.C. § 2412(d)(1)(A),(2)(B).

Here, it is not disputed that Abioye is a prevailing party, that his net worth has never exceeded 2 million dollars, and that the fee motion was filed in a timely

---

[6] A prevailing party is one who demonstrates that he or she has achieved a "material alteration of the legal relationship of the parties" and a "judicial imprimatur on the change." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 604–05 (2001).

[7] The EAJA defines "party" as "an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed . . . ." 28 U.S.C. § 2412(d)(2)(B).

manner. Respondents can avoid payment of fees only if they can show that their pre-litigation and litigation positions were "substantially justified" or that special circumstances exist that would make a fee award unjust.

The next task for the Court, therefore, is to determine whether the position of the United States was substantially justified or that special circumstances make an award unjust.

### C. Respondents Were Not Substantially Justified In Their Litigation Position[8]

It is the government's burden to show that its position had a reasonable basis both in law and in fact. *See Johnson v. Gonzalez,* 416 F.3d 205, 210 (3d Cir. 2005 (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)) (defining substantially justified as "'justified in substance or in the main' – that is, justified to a degree that could satisfy a reasonable person"). The Court "'must not assume that the government's position was not substantially justified simply because the government lost on the merits.'" *Johnson*, 416 F.3d at 210 (quoting *Kiareldeen,* 273 F.3d at 554).

Respondents argue that if the EAJA applies, the Court should deny Abioye's request for attorneys' fees and expenses because the Respondents' litigation position

---

[8]  Respondents "must meet the substantially justified test twice – once with regard to the underlying agency action and again with regard to its litigation position in the proceedings arising from that action." *Johnson v. Gonzales*, 416 F.3d 205, 211 (3d Cir. 2005) (citing *Kiareldeen v. Ashcroft*, 273 F.3d 543, 545 (3d Cir. 2001). Because the Court finds that Respondents' litigation position was not "substantially justified," the Court need not decide whether the position the government took during the underlying agency proceeding was "substantially justified."

was "substantially justified." According to Respondents, their actions were compelled by 8 U.S.C. § 1226 and justified because Abioye was subject to mandatory detention and ineligible for release under § 1226(c). They argue that "federal litigators are obligated to defend as-applied challenges to this statute" and that their position that Abioye had not met the four-factor test articulated in *German Santos* was reasonable. ECF No. 27.

The Court finds neither of these arguments to have merit. Although § 1226(c) provides for mandatory detention and the Supreme Court has determined that "[d]etention during removal proceedings is a constitutionally permissible part of" the removal process," *Demore v. Kim*, 538 U.S. 510, 531 (2003), the Court of Appeals for the Third Circuit has held that prolonged detention raises due process concerns. The Court of Appeals for the Third Circuit addressed as-applied challenges to prolonged detention under § 1226(c) in *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 233 (3d Cir. 2011), and *Chavez-Alvarez v. Warden York Cnty. Prison*, 783 F.3d 469, 474-75 (3d Cir. 2015). In both, the appellate court held that "where detention becomes unreasonable, the Due Process Clause demands a hearing." *See Diop*, 656 F.3d at 233; *Chavez-Alvarez*, 783 F.3d at 474-75.

In *Diop*, the Court of Appeals considered whether a petitioner was entitled to a bond hearing nearly three years into his detention under § 1226(c). *Diop*, 656 F.3d at 223-26. The appellate court held that, "[w]hen detention becomes unreasonable, the Due Process Clause demands a hearing, at which the Government bears the burden of proving that continued detention is necessary to

fulfill the purposes of the detention statute." *Id.* at 233. The Court of Appeals "noted that in rejecting a due process challenge by a § 1226(c) detainee in *Demore*, the Supreme Court emphasized that 'mandatory detention pursuant to § 1226(c) lasts only for a 'very limited time' in the vast majority of cases,' and concluded that the result in that case 'may well have been different' if the petitioner's detention had been 'significantly longer than the average'." *Borbot v. Warden Hudson County Correctional Facility*, 906 F.3d 274, 278 (3d Cir. 2018) (quoting *Diop*, 656 F.3d at 233 (quoting *Demore*, 538 U.S. at 529 & n.12).[9] And in *Chavez-Alvarez*, the Court of Appeals held that because petitioner's year-long detention under § 1226(c) had become unreasonable, he was entitled to a bond hearing. *Chavez-Alvarez*, 783 F.3d at 478. Noting that whether detention has become unreasonable is "highly fact-specific," the Court of Appeals recognized that at a certain point continued detention without a bond hearing violates due process:

> [D]ue process requires us to recognize that, at a certain point – which may differ case by case – the burden to an alien's liberty outweighs a mere presumption that the alien will flee and/or is dangerous. At this tipping point, the Government can no longer defend the detention against claims that it is arbitrary or capricious by presuming flight and dangerousness; more is needed to justify the detention as necessary to achieve the goals of the statute. As we said in *Diop*, section 1226(c) "implicitly authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill

---

[9] In *Demore*, the Supreme Court found that § 1226(c)'s mandatory detention provision does not, by itself, violate due process, holding that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore*, 538 U.S. at 531 (citations omitted). The petitioner in *Demore* had been in civil detention without a bond hearing for five months.

11

> the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." *Id.* at 231. In Diop's case we weighed the goals of the statute against the personal costs to his liberty resulting from his detention of roughly two years, eleven months, and concluded Diop's detention was unconstitutional. *Id.*

*Chavez-Alvarez*, 783 F.3d at 474-75. And the appellate court concluded that "beginning sometime after the six-month timeframe considered by *Demore*, and certainly by the time Chavez–Alvarez had been detained for one year, the burdens to Chavez–Alvarez's liberties outweighed any justification for using presumptions to detain him without bond to further the goals of the statute." *Id.* at 478. Thus, the court determined that Chavez-Alvarez was entitled to a bond hearing. *Id.*

Here, Respondents were on notice that the Court of Appeals for the Third Circuit, prior to Abioye's detention, had found that due process entitles § 1226(c) detainees to a bond hearing at some point, with the exact time varying with the facts of the case. Any doubt that the Supreme Court's decision in *Jennings v. Rodriguez,* 583 U.S. 281 (2018),[10] abrogated *Diop* and *Chavez-Alvarez* was removed in July 2020 when the Court of Appeals for the Third Circuit confirmed that as-applied due-process challenges to mandatory detention under § 1226(c) survive *Jennings*:

> [E]ven though the [*Jennings*] Court foreclosed reading the statutory text [of § 1226(c)] as guaranteeing periodic bond

---

[10]   The Supreme Court's decision in *Jennings* abrogated *Diop* and *Chavez-Alvarez* to the extent those decisions construed § 1226(c) to contain an implicit "reasonable" time on the period for which detention without a bond hearing was statutorily authorized. However, *Jennings* did not call into question the constitutional holdings in *Diop* or *Chavez-Alvarez* that detention under § 1226(c) may violate due process if unreasonably long.

> hearings, it reserved the aliens' constitutional claims for remand. *Jennings*, 138 S. Ct. at 851. One of those claims was that due process forbids prolonged confinement under § 1226(c) without a bond hearing. . . . *Jennings* thus left our framework for assessing as-applied constitutional challenges intact. . . .
>
> *Jennings* . . . did not touch the constitutional analysis that led *Diop* and *Chavez-Alvarez* to their reading. That analysis stands. We are thus bound by *Diop* and *Chavez-Alvarez*'s decision that § 1226(c) is unconstitutional when applied to detain an alien unreasonably long without a bond hearing. *See Borbot v. Warden Hudson Cty. Corr. Facility*, 906 F.3d 274, 278 (3d Cir. 2018) (recognizing that *Diop* had a constitutional holding); *Guerrero-Sanchez v. Warden York Cty. Prison*, 905 F.3d 208, 222 n.11 (3d Cir. 2018) (same).

*German Santos*, 965 F.3d at 210 (citations omitted). *Diop*, *Chavez-Alvarez*, and *German Santos* were all decided *years* before Abioye was taken into detention in May of 2022.

Further, while the Court of Appeals for the Third Circuit has not laid out a specific standard for district courts to follow, multiple district courts within this Circuit which have examined the question have noted a "growing consensus within this district and, indeed it appears throughout the federal courts, that prolonged detention of aliens under § 1226(c) raises serious constitutional concerns." *Alli v. Decker*, 644 F. Supp. 2d 535, 539 (M.D. Pa. 2009) (citations omitted), *rev'd in part, vacated in part*, 650 F.3d 1007 (3d Cir. 2011). *See Clarke v. Doll*, 481 F. Supp. 3d 394, 397-98 (M.D. Pa. 2020) (detained for 20 months, ordering individualized bond hearing); *Sisiliano-Lopez v. Sabol*, No. 1:16-CV-1793, 2017 WL 3613982 (M.D. Pa. Aug. 4, 2017), *report and recommendation adopted sub nom. Sisiliano-Lopez v.*

*Lowe*, No. 1:16-CV-1793, 2017 WL 3602037 (M.D. Pa. Aug. 22, 2017) (detained for nearly two years; ordering individualized bond hearing); *Walker v. Lowe*, No. 4:15-CV-0887, 2016 WL 3165645 (M.D. Pa. June 7, 2016) (detained for approximately 3 years, ordering individualized bond hearing).

Here, Abioye was detained for over sixteen months without an individualized bond hearing, more than the year-long detention in *Chavez-Alvarez* and the fifteen-month detention in *German Santos*. *See Arias v. Choate*, No. 1:22-cv-02238-CNS, 2023 WL 4488890, at *7 (D. Colo. July 12, 2023) ("Respondents knew that courts in this District have repeatedly and unequivocally found detention under 8 U.S.C. § 1226(c) without an individualized bond hearing unreasonable, and detention for approximately a year or more constitutionally unreasonable."). Despite knowing prolonged confinement without an individualized bond hearing raises due process concerns, when Abioye requested a bond hearing sixteen months after initial detention, Respondents, in lieu of taking no position or agreeing to a bond hearing, opposed his request. Where, as here, there are multiple cases from the Court of Appeals for the Third Circuit, which have found that prolonged detention under § 1226(c) without an individualized bond hearing is unreasonable, and detention for approximately a year or more without an individualized bond hearing is constitutionally unreasonable, Respondents' litigation position did not have a reasonable basis in both law and fact. Given this, the Court finds that Respondents have not shown that their litigation position was substantially justified.

### D. No Special Circumstances Exist Which Make An Award Of Attorneys' Fees Unjust

Respondents offer minimal briefing on the "special circumstances" element that would otherwise make the award of EAJA fees unjust. Basically, their position is that "the Attorney's General's hands are tied when it comes to defending the constitutionality of an Act of Congress" and "[t]he government should not be penalized under the EAJA for simply following its obligation to defend Acts of Congress and declining to exercise authority it does not have." ECF No. 27 at 15, 16. In examining the record before it, the Court finds that there is nothing to suggest special circumstances exist which would make an award of EAJA fees unjust.

For all of these reasons, the Court finds that Abioye is eligible to recover reasonable attorneys' fees and other expenses under the EAJA.

### E. The Fees And Expenses Sought Are Reasonable

The last task of the Court is to determine what fee award is reasonable. Abioye has requested $18,224.58.[11] Abioye's counsel submitted records documenting the reasonable time spent working on the habeas petition and the instant motion. Respondents have not challenged the time spent by, or the hourly rates of, Abioye's counsel. The Court, therefore, finds that Abioye is entitled to an award in the total amount of $18,224.58.

---

[11] Abioye originally sought $14,847.08 in fees, which did not include the 14 hours of work spent on the Reply. Applying the hourly rate of $241.45, the additional fee due is $3,377.50, for a total of $18,224.58. ECF No. 31.

### F. EAJA Award Payment

The EAJA directs the award of any attorney's fees directly to the prevailing party. 28 U.S.C. § 2414(d)(1)(A); *see Astrue v. Ratliff,* 560 U.S. 586 (2010). In addition, the Supreme Court of the United States has stated that any fee award is subject to an offset to satisfy the litigant's pre-existing debt to the government. *Ratliff,* 560 U.S. at 597-98. However, under *Ratliff,* an award is payable to the attorney where the client has no outstanding federal debt and expressly assigned the right to receive fees to their attorney. *See Beattie v. Colvin*, 240 F. Supp.3d 294, 299, n.1 (D.N.J. 2017) (citing *Ratliff,* 560 U.S. 586) (stating, "where, as is the case here, there is an assignment agreement and the prevailing party owes no debt to the government, the Supreme Court has honored that agreement and awarded attorney's fees directly to the prevailing party's counsel.").

Here, Abioye avers that, to the best of his knowledge, he does not owe any debt to the United States federal government and expressly states that he has assigned payment of any award of fees and costs to CAIR Coalition.[12] ECF No. 25-1. Accordingly, Respondents will be directed to pay Abioye's counsel the sum of $18,224.58 in attorneys' fees and expenses.

---

[12] As part of his criminal sentence, Abioye was ordered to pay $1,335,923.77 in restitution. *See* public docket *United States v. Abioye*, Criminal Docket No. 1:20-cr-0052 (Dist. of Maryland), https://mdd-ecf.sso.dcn/cgi-bin/DktRpt.pl?476611 (last viewed 9/26/2020). To clarify, that amount is to be paid to the victims of his crime, not the federal government, and therefore does not qualify as a debt to the federal government.

## IV. Conclusion

For these reasons, the Court will grant Abioye's Motion for Award of Attorneys' Fees Pursuant to the Equal Access to Justice Act.  Abioye is hereby awarded $18,224.58 in attorneys' fees and expenses under the EAJA.

An appropriate Order follows.

Dated:  September 26, 2024            BY THE COURT:

                                      s/Christopher B. Brown
                                      Christopher B. Brown
                                      United States Magistrate Judge




cc:    All Counsel of Record
       (via ECF electronic notification)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA
# JOHNSTOWN DIVISION

| | |
|---|---|
| ADEWUMI ABIOYE, ) | Civil Action No. 3:23-cv-0251 |
| ) | |
| Petitioner, ) | |
| ) | United States Magistrate Judge |
| v. ) | Christopher B. Brown |
| ) | |
| LEONARD ODDO, in his official ) | |
| Capacity as Warden of the Moshannon ) | |
| Valley Processing Center, CAMILLA ) | |
| WAMSLEY, in her official capacity as ) | |
| Acting Field Office Director of the ) | |
| Immigration and Customs ) | |
| Enforcement, Enforcement and ) | |
| Removal Operations, Philadelphia ) | |
| Field office; ALEJANDRO ) | |
| MAYORKAS, in his official capacity as ) | |
| Secretary of the Department of ) | |
| Homeland Security; and MERRICK ) | |
| GARLAND, in his official capacity as ) | |
| Attorney General of the United States, ) | |
| ) | |
| Respondents. ) | |

## ORDER

**AND NOW**, this 26th day of September, 2024, in accordance with the accompanying Memorandum Opinion, it is hereby **ORDERED** that the Motion for Attorneys' Fees and Expenses Under the Equal Access to Justice Act filed by Petitioner Adewumi Abioye is **GRANTED**.  Respondents shall pay Abioye's counsel

the sum of $18,224.58 in attorneys' fees and expenses within thirty days of the date of this Order.

BY THE COURT:

s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge

cc:     All Counsel of Record
         (via ECF electronic notification)